UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:13-CV-00044-TBR

SHAWNDA PACHECO                                                                                        Plaintiff

v.

NANCY WALDROP,                                                                                        Defendants
individually and in her official capacity as Superintendent
of the McCracken County School System,

and

VICTOR ZIMMERMAN,
individually and in his official capacity as Principal
of Reidland High School

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendants' motion for reconsideration. (Docket #35). Plaintiff has not responded.[1] Defendants have replied. (Docket #37). This matter is now ripe for adjudication. For the following reasons, the Defendants' motion for reconsideration (Docket #35) is GRANTED.

BACKGROUND

The facts of this case are explained in greater detail in this Court's order granting in part and denying in part Defendants' motion for summary judgment.

This litigation arises out of the termination of Plaintiff Shawnda Pacheco from her teaching position at Reidland High School ("RHS"). Pacheco learned from Taylor Ballard, another teacher at RHS, of a possible bomb attack on RHS being planned by two students. The school administration investigated the threat and determined the students had been discussing the

---

[1] Plaintiff's only response was the affidavit of Taylor Ballard, a teacher at Reidland High School. (Docket #36).

1

video game Minecraft. Pacheco, unaware of the result of the investigation, became concerned when she observed the two students still in class. Pacheco reported the threat to the Paducah Sun in an indirect fashion. Specifically, Pacheco dictated a letter which an RHS student typed, had the student sign the letter in the student's own name. Pacheco mailed the letter the next day, which was also the day after the school shooting in Newtown, Connecticut. In full, the letter stated:

> Dear sir,
>
> As a student at Reidland High School, I see fights dealt with promptly, tobacco abuse punished according to school regulations, and even profanity is dealt with promptly. But we have a student, someone who sits in class with us, who has brought weapons twice and most recently plotted a map of bomb and gun attack sites around the school area. The student has yet to be punished for anything. Is it that Doctor Waldrop, the Superintendent, is afraid to enforce school rules? Is he being protected because of some minority status? Although he's not a minority. Is he special ed? Regardless the rest of us sit in class with him knowing he's dangerous. What would you do Mr. Editor? (Docket #1, Ex. 1).

The Paducah Sun, upon receiving the letter, contacted the McCracken County Sheriff's office. Law enforcement met with Nancy Waldrop, RHS's superintendent. Since the nature of threat could not initially be corroborated, the decision was made to cancel RHS classes on December 18, 2012. This day happened to be one on which final exams were planned, which were rescheduled for after the winter break. Reidland Middle School, which was physically attached to RHS, was also canceled. RHS investigated the letter to the editor and discovered it had been written on behalf of Pacheco. Waldrop fired Pacheco for insubordination and conduct unbecoming a teacher.

Pacheco filed this lawsuit claiming she was wrongfully terminated in violation of her First Amendment Right to Free Speech and that Waldrop and Defendant Victor Zimmerman violated the Kentucky Whistleblower Act by terminating her. Defendants moved for summary

judgment on all claims. This Court conducted a *Pickering* balancing test and ruled Pacheco's First Amendment interest was outweighed by RHS's interest. Specifically, Pacheco's First Amendment interest were outweighed because her report was false, could have been verified or dispelled by merely inquiring with the school administration, and caused significant disruption to the school. (Docket #33). This Court ruled Pacheco's Whistleblower claim could proceed.

Defendants now move for reconsideration of this Court's ruling on Pacheco's Whistleblower claims.

## DISCUSSION

The interpretation of the Kentucky Whistleblower Act is a legal issue which is reviewed *de novo*. *Workforce Dev. Cabinet v. Gaines*, 276 S.W.3d 789, 792 (Ky. 2008).

Pacheco made her report to the Paducah Sun newspaper. Defendants argue newspapers are not included in the Kentucky Whistleblower Act (the "Act") and therefore Pacheco is not protected.

The Act states:

> No employer shall subject to reprisal, or directly or indirectly use, or threaten to use, any official authority or influence, in any manner whatsoever, which tends to discourage, restrain, depress, dissuade, deter, prevent, interfere with, coerce, or discriminate against any employee who in good faith reports, discloses, divulges, or otherwise brings to the attention of the Kentucky Legislative Ethics Commission, the Attorney General, the Auditor of Public Accounts, the Executive Branch Ethics Commission, the General Assembly of the Commonwealth of Kentucky or any of its members or employees, the Legislative Research Commission or any of its committees, members or employees, the judiciary or any member or employee of the judiciary, any law enforcement agency or its employees, or any other appropriate body or authority, any facts or information relative to an actual or suspected violation of any law, statute, executive order, administrative regulation, mandate, rule, or ordinance of the United States, the Commonwealth of Kentucky, or any of its political subdivisions, or any facts or information relative to actual or suspected mismanagement, waste, fraud, abuse of authority, or a substantial and specific danger to public health or safety. No employer shall require any employee to give notice prior to making such a report, disclosure, or divulgence. KRS § 61.102(1).

The focus in this case is whether the phrase "any other appropriate body or authority" includes newspapers. There is no Kentucky case law directly addressing this issue.

Perhaps an argument in favor of inclusion is Kentucky's policy that statutes are to be "liberally construed with a view to promote their objects and carry out the intent of the legislature." KRS § 446.080. The Act was "designed to protect employees from reprisal for the disclosure of violations of the law." *Boykins v. Housing Authority of Louisville*, 842 S.W.2d 527, 529 (Ky. App. 1992). "It serves to discourage wrongdoing in government, and to protect those who make it public." *Gaines*, 276 S.W.3d at 793 ("The purpose of the Whistleblower Act is clear, and it must be liberally construed to serve that purpose"). A broad interpretation of the phrase "any other appropriate body or authority" to include newspapers could arguably serve the Act's purpose by providing an outlet – the media – that is outside of the government on which the employee is reporting. In *Pickering*, a teacher was fired after sending a letter to the editor criticizing the board of education. *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968). While that case is clearly distinguishable because the teacher's only claim was based on free speech, it is nonetheless instructive that a letter to the editor can be a powerful tool in reporting fraud and mismanagement.

Conversely, there are several persuasive factors which compel the conclusion that newspapers are not included by the Act. First and importantly, the Act lists only public bodies before the phrase "or any other appropriate body or authority," implying that phrase should be restricted to public bodies. KRS § 61.102(1). The doctrine of *ejusdem generis* holds that if "in a statute, general words follow or precede a designation of particular subjects or classes of persons, the meaning of the general words ordinarily will be presumed to be restricted by the particular designation, and to include only things or persons of the same kind, class, or nature as those

4

specifically enumerated, unless there is a clear manifestation of a contrary purpose." *Ky. Ret. Sys. v. Brown*, 336 S.W.3d 8, 16 (Ky. 2011) (*quoting Steinfeld v. Jefferson County Fiscal Court*, 312 Ky. 614, 229 S.W.2d 319, 320 (Ky. 1950)).

Second the fact that there is no case in which the Act was applied to newspapers suggests the Act does not extend to reports made to newspapers. To be fair, in general the absence of evidence is not evidence of absence. However, the lack of observable cases in which the Act was interpreted to include newspapers suggests, albeit weakly, that the Act does not include newspapers. *See* Douglas Walton, *Nonfallacious Arguments From Ignorance*, 29 American Philosophical Quarterly 381 (1992) (citing as an example the fact that drugs are approved for use based on the lack of observable negative side effects, from which the conclusion may be drawn that the drugs do not cause those side effects).

Third, it is persuasive that a federal whistleblower statute has been interpreted to exclude reports to newspapers.[2] *Tides v. Boeing Co.*, 644 F.3d 809 (9th Cir. 2011). Kentucky courts have routinely looked to the interpretation of federal whistleblower statutes for guidance. *Commonwealth Dep't of Agric. v. Vinson*, 30 S.W.3d 162, 169 (Ky. 2000); *Davidson v. Commonwealth*, 152 S.W.3d 247, 255 (Ky. App. 2004).

Finally, although Kentucky courts have not addressed this specific issue, when they have defined the phrase "any other appropriate body or authority," they speak in terms of a "public body." *Workforce Dev. Cabinet v. Gaines*, 276 S.W.3d 789, 793 (Ky. 2008) ("We believe that 'any other appropriate body or authority' should be read to include any public body or authority with the power to remedy or report the perceived misconduct"); *Powers v. Lexington-Fayette*

---

[2] As above, the apparent lack of any case in which a federal whistleblower statute's protection was extended to reports made to a newspaper is suggestive that such protection does not exist.

*Urban County Gov't*, 2009 Ky. App. LEXIS 208 (Ky. App. 2009); *see also Grise v. Christian County Fiscal Court*, 2010 U.S. Dist. LEXIS 66198 (W.D. Ky. 2010).

In short, a plain reading of the Act clearly indicates that a report must be made to a public entity to be protected. Cases interpreting federal whistleblower statutes have reached the same conclusion. Accordingly, the Court will grant summary judgment to Defendants on the grounds that Pacheco's report to a newspaper is not protected by the Act.[3]

For the following reasons, the Defendants' motion for reconsideration (Docket #35) is GRANTED. The Court will grant Defendants' motion for summary judgment. (Docket #33). A separate order and judgment shall issue.

---

[3] Defendants also reassert their argument that Pacheco's whistleblower claim should be dismissed because she did not make it in good faith. While that is a close call, the Court would again find this issue unsuitable for summary judgment because "as a general rule, a determination of whether a party acted in good faith is a question of fact that does not lend itself well to summary judgment." *Ellison v. Oldham County Sheriff's Dep't*, 2010 Ky. App. Unpub. LEXIS 336 *20 (Ky. App. 2010) (unpublished); *see also Grise v. Christian County Fiscal Court*, 2010 U.S. Dist. LEXIS 66198 *15-16 (W.D. Ky. 2010); *Ross v. Univ. of Ky.*, 2014 Ky. App. Unpub. LEXIS 3 *20 (Ky. App. 2014) (unpublished).